## THE STATE OF KANSAS v. J. N. NYE.

| 32 | 201 |
| 53 | 663 |
| 32 | 201 |
| 62 | 630 |
| 62 | 635 |

1. INTOXICATING LIQUOR; *State to Prove No Permit.* Where an information charges a defendant with unlawfully selling intoxicating liquors without having a permit therefor, it is incumbent upon the prosecution to prove by competent evidence that the defendant had no permit at the time of the commission of the alleged offense, in order to sustain a verdict of guilty. ( *The State v. Schweiter,* 27 Kas. 499.)

2. EVIDENCE, *Insufficient to Prove No Permit.* Where the probate judge testifies that he has in court a book called the "Record of Druggists' Permits;" that he has examined it; that there is no record in it of any permit ever having been issued to the defendant; that if he ever issued a permit to the defendant to sell intoxicating liquors, the book does not show it; and he does not testify that he recorded his permits in this book; and does not testify that it contained all the permits; and does not testify that it was the journal of his court, his evidence is wholly insufficient to prove that no permit was issued.

*Appeal from Chase District Court.*

PROSECUTION for a violation of the prohibitory liquor law. At the December Term, 1883, defendant *Nye* was convicted on three counts in an information filed against him, fined $100 on each count, adjudged to pay the costs, and be committed to the county jail until the fines and costs were paid. From this sentence he appeals.

*C. H. Carswell,* and *Thos. H. Grisham,* for appellant.

The opinion of the court was delivered by

HORTON, C. J.: The defendant was convicted upon three counts in an information charging him with selling intoxicating liquors without a permit therefor, and was fined three hundred dollars and costs. From this conviction and sentence he appeals to this court.

It is urged upon his part, that there was no evidence before the court tending to prove that he had no permit. In *The State v. Schweiter,* 27 Kas. 499, it was said that no material averment in an information which is denied by the defendant, is taken as true; that it is incumbent upon the prosecution in

this character of cases, to prove that a defendant has no permit; and that this proof must be by competent evidence. Therefore, if the testimony does not tend to show that no permit had been issued to the defendant, we must hold that the verdict is not sustained by the evidence. The only testimony upon this point is as follows: C. C. Whitson was then sworn on behalf of the state, and testified:

"I am now, and have been for the last eleven years, probate judge of Chase county, Kansas. I have here a record or book called the 'Record of Druggists' Permits.' I have made an examination of it, and there is no record in it of any permit ever having been issued to the defendant in this case. If I ever issued to him a permit to sell intoxicating liquors as a beverage, this book of druggists' permits does not show it."

Section 2 of ch. 128 of the act to prohibit the sale of intoxicating liquors, among other things provides:

"The probate judge shall consider such petition and bond, [presented by the applicant to obtain a druggists' permit,] and if satisfied that the petition is true, and that the bond is sufficient under this act, may in his discretion grant a permit to the applicant to sell intoxicating liquors for medical, scientific and mechanical purposes only; and thereupon, before delivering said permit, and before it shall be of any validity, the probate judge shall record upon the journal of his court the said permit, together with his order granting the same, and the bond filed therewith and justification thereon, which said permit shall be posted in a conspicuous place in the store where such business is carried on. The probate judge shall receive for said services the sum of five dollars, to be paid by the applicant."

The probate judge did not testify that he recorded his permits in the book called the "Record of Druggists' Permits," and did not testify that the record or book which he presented to court and which he stated he had examined, contained all the permits issued by him; neither did he testify that it was the journal of his court in which such permits were recorded. Under these circumstances, we think the evidence wholly insufficient to support the verdict. If the probate judge had testified that he had in his possession a record containing all

the permits issued by him, and that he had examined such record or journal and found that no permit had issued to the defendant, the state would have made out a *prima facie* case. Even if the witness had stated that he had issued no permit to the defendant, such evidence would have been sufficient. (*The State v. Schweiter*, supra.)

It seems exceedingly strange, with the probate judge before the court, that the county attorney made no other or further examination, and was satisfied with the evidence of the judge as introduced. It certainly must have been an oversight upon his part. With the evidence at hand, he failed to utilize it as he might have done. The better practice in such cases as this is, after the probate judge has testified that he is in office and has the possession of the records thereof, to inquire whether he has examined the records to ascertain whether any permit has been issued to the defendant. If he answers that he has made such examination, the next question should be, whether the records contain such permit. If there is nothing in the records of his office showing that a permit has been issued, the probate judge may so state. If there is any record of it, of course the journal or book containing the same should be produced. The statute casts the duty respecting permits upon the person holding the office of probate judge, rather than the probate court; and while the statute provides that the permit shall be recorded in the journal of the court, it is not necessary that all the records of the probate court should be contained in one book. The probate judge may have a journal for the recording of druggists' permits, a journal for the recording of bonds filed in his court, a journal for recording other proceedings before him, and also other books containing still other records.

Upon the record, we are compelled to reverse the judgment, and remand the case for a new trial.

All the Justices concurring.